ROLAND CARLSON, Appellee, v. ALBERT MEUSBERGER, Appellant.

**HIGHWAYS: Regulation and Use—Obscured View—When Not Jury**
1 **Question.** When the evidence shows that the operator of an automobile, in approaching an intersecting highway, cannot *clearly and distinctly* see the approaching part of the intersecting highway because of the presence of near-by objects, the court must not submit

to the jury the question whether the operator's view is obstructed, but, on the contrary, must peremptorily tell the jury that the view was obstructed and that the operator was under an imperative duty to give an adequate signal of his approach.

HIGHWAYS: Regulation and Use—Obscured Intersection—Failure to Signal Approach—Contributory Negligence. The failure of the operator of an automobile, in approaching an obscured intersection, to give any statutory warning signal of his approach is an act of negligence; but the court cannot say, as a matter of law, that such negligence was a *contributing* cause of a subsequent collision, when the delinquent operator (1) had the statutory right of way at such intersection, (2) was traveling 18 or 20 miles per hour when he entered the intersection, (3) was emitting, in the operation of his car, a noise clearly audible for 35 rods in the direction from which the other vehicle was coming, and (4) was within the intersection and within plain view of the other party to the accident before the latter entered the intersection.

HIGHWAYS: Regulation and Use—Yielding Right of Way at Intersection. The operator of an automobile, when approaching an intersection, must be prepared to yield the statutory right of way in favor of a vehicle which is approaching him from his right; and this is true notwithstanding the negligence of the operator having the right of way.

HIGHWAYS: Regulation and Use—Control of Vehicle at Intersection. The driver of an automobile who approaches and enters an intersecting highway at from 18 to 20 miles per hour, with his brakes in good condition, may not be said not to have his car under control as regards an automobile approaching the intersection from his left.

HIGHWAYS: Regulation and Use—Nonreduction of Speed at Intersection. The driver of an automobile who approaches and enters an intersection at a rate of speed which the jury may find was reasonable, is not negligent because he fails to reduce said rate of speed.

TRIAL: Instructions—General Statement of Issues—Harmless Omission. The court need not specifically tell the jury in the language of the statute that "every motor vehicle must be equipped with a suitable bell, horn, or other signaling device," when the material issue is as to the effect of a failure to signal one's approach to an intersection, and when the court specifically told the jury that, under the undisputed testimony, no signal of any kind was given.

HIGHWAYS: Regulation and Use—Travel on Left-Hand Side—Justification and Excuse. Principle reaffirmed that the entire width of the highway is for the use of the traveler, and that circumstances *may*

be such as to excuse or justify him in traveling on the left-hand side, instead of on the right-hand side.

**Headnote 1:** 28 Cyc. p. 48. **Headnote 2:** 28 Cyc. pp. 37, 49. **Headnote 3:** 28 Cyc. p. 34. **Headnote 4:** 28 Cyc. p. 29. **Headnote 5:** 28 Cyc. p. 34. **Headnote 6:** 4 C. J. p. 1049; 38 Cyc. p. 1618. **Headnote 7:** 29 C. J. p. 647.

*Appeal from Calhoun District Court.*—M. E. HUTCHISON, Judge.

JUNE 25, 1925.

ACTION for damages resulting from an automobile collision. The plaintiff had a verdict; and from judgment thereon, defendant appeals.—*Reversed and remanded.*

*Jacobs & McCaulley* and *E. C. Stevenson,* for appellant.

*Kelleher & Mitchell,* for appellee.

VERMILION, J.—The appellee sued to recover for personal injuries and damage to his automobile, received in a collision with a car driven by appellant. The collision occurred on the morning of September 9, 1923. Appellee, another young man, and two young ladies were riding in a Ford roadster, with the top up and the side curtains on. Appellee was seated on the left side, driving. One of the girls sat in the middle; and the other young man, with the other girl on his lap, sat on the right side of the single seat. They had left Rockwell City between 7 and 8 o'clock in the morning, going west on a graveled road. About 9 miles west of Rockwell City, at a point where the road was crossed by a road running north and south, the car came into collision with a Ford coupé, driven by the appellant, and approaching the intersection from the south. The appellee was severely injured.

Error is assigned on the giving of certain instructions to the jury; but the chief contention is that the evidence failed to establish appellee's freedom from contributory negligence, and that the court should for that reason have sustained appellant's motion for a directed verdict, made at the close of appellee's evi-

dence and repeated at the close of all the evidence. It is not seriously claimed that there was not sufficient evidence of negligence on the part of appellant to take the case to the jury and to sustain the verdict, so far as that question is concerned.

Both roads were graded, with ditches at the sides. Across the north and south road on either side of the east and west road there were culverts, with concrete headblocks or bulkheads at the ends. The intersection, the space between these headblocks, was about 31 or 32 feet north and south, and 28 feet east and west. The graveled part of the east and west road was about 25 or 26 feet wide. The road as it approached the intersection from the east was on an upgrade. The field to the southeast of the intersection was in corn, and fenced with wire along the roads. There was testimony that the fence was rounded somewhat at the corner, and that at that point there was a pile of rock, and in the vicinity a telephone pole and an electric line pole, and that tall weeds were growing at the corner. There was a sharp conflict in the testimony as to the point in the intersection of the two roads at which the collision occurred.

I. The court submitted to the jury the question whether appellee's view was obscured as he approached the intersection; and this is assigned as error.

The statute in force at the time, Chapter 275, Acts of the Thirty-eighth General Assembly, provided, in Section 25, as follows:

"Every motor vehicle shall be equipped with a suitable bell, horn, or other signaling device producing an abrupt sound sufficiently loud to serve as an adequate warning of danger, but no persons operating any motor vehicle shall make or cause to be made any unnecessary noise with such bell, horn, or signaling device, or use the same except as a warning of danger. * * * An adequate signaling device shall in all cases be sounded on approaching curves, tops of hills, and the intersecting highways in the country where the operator's view is obscured."

1. HIGHWAYS: regulation and use: obscured view: when not jury question.

A view may be said to be obscured when it is not clear and distinct. Century Dictionary.

There was much testimony from witnesses for both parties tending to show that the view of one approaching from the east

was obscured by the relative elevation of the roads, the standing corn, and·to some extent by the other objects southeast of the intersection.  The appellee testified:

"You can't see very much toward the south there on account of the corn.  I couldn't see very much * * * I looked to the north first,—that's my right-hand side.  I then looked to the south.  I don't remember seeing any high weeds there.  I can't remember seeing a big pile of rock.  I remember the cornfield, because I saw it there.  I think the corn came up close to the fence.  I did not see the telephone pole there.  I did not see the Meusberger car until I got within 15 or 20 feet of it."

One of the young women with him testified:

"This was an ordinary cornfield.  The hill was just a small knoll.  As we approached the crossing, we were going up hill.  The crossing is higher than the road to the east.  The top of the hill is at the intersection.  I don't remember any other obstructions in the cornfield to the south."

The other young woman, who was sitting on the lap of another occupant of appellee's car, and facing the south, and whose line of vision, while slightly higher than appellee's, was more obstructed by the side curtains, testified:

"My head was up pretty high, about the level of the celluloid strips in the curtains.  I could see through the celluloid by turning down my head.  I turned my head down when I seen the car.  The top of the celluloid was about an inch below the line of my eyes.  I could see the road and the fences toward the south as we drove along, and a little beyond the fences.  I could see the fences and the cornfield, and pasture lands on the south. and the houses.  There is rather an incline at the crossroads.  I could see the cornfields, looking toward the south. * * * My attention was largely toward the south, and I was looking toward the south.  I did not remember seeing the fence post at the southeast corner of that intersection.  I did ·not see the rock pile.  I did see the cornfield.  It was rather tall.  I did not see the weeds.  I did not see the telephone pole at the corner.  I could not see through that cornfield as I looked over into the other road."

There is some dispute as to the height of the corn.

The testimony of this witness is the most favorable to the

contention that the view was not obscured, that is to be found in the record. Her line of vision was higher than that of appellee, the driver of the car; and the plain import of her testimony was that, even under such circumstances, her view was to some extent obstructed. The appellee testified that he could not see very much toward the south on account of the corn. A careful reading of the record leads us to the conviction that the testimony showed without conflict that the view of the road to the south of the driver of a car approaching from the east was obscured, within the meaning of the statute. The only conflict in the testimony on this point is as to the extent of the obscurity; but that it was sufficient to prevent a clear and distinct view is clearly shown by all the testimony.

The question of contributory negligence was the close question in the case. The verdict for appellee was a finding that he was not guilty of contributory negligence. This result, so far as the sounding of a warning signal was concerned, may have been reached by a finding, under the instruction in question, that the view was not obscured, and that, therefore, no signal was required. Such a finding would have no support in the evidence, and would relieve the jury from consideration of the very vital question whether the failure of appellee to give a signal of his approach had causal connection with the collision. The instruction was erroneous. The jury should have been told that appellee was required by statute to sound a signal of his approach to the intersection in question.

II. There is no testimony that the appellee sounded any warning signal as he approached the intersection; and it is chiefly upon this omission that the appellant bases the claim that appellee was guilty of contributory negligence.

It must be conceded that, if appellee's view of the road entering the intersection from the south was obscured, his failure to give a warning signal as he approached the intersection from the east was negligence. *Hough v. Illinois Cent. R. Co.,* 169 Iowa 224; *Clark v. Weathers,* 178 Iowa 97; *Corning v. Maynard,* 179 Iowa 1065; *Girl v. United States R. Adm.,* 194 Iowa 1382. But the fact that his view was obscured, and that his failure to sound a signal of his approach, as re-

2. HIGHWAYS: regulation and use: obscured intersection: failure to signal approach: contributory negligence.

quired by the statute, was negligence, would not be conclusive upon the question of contributory negligence. There would remain the question whether such negligence had any causal relation to the collision. Appellee may have been guilty of negligence; but if that negligence did not contribute to cause the collision, it would not defeat his right to recover. It is not negligence merely, but contributory negligence on the part of a plaintiff, that defeats his recovery. The burden was upon appellee to establish that he was guilty of no negligence that contributed to the collision. His admitted failure to give the warning signal required by the statute constituted negligence, and had at least an apparent causal connection with the collision. But if there is in the record evidence from which the jury might have found that no such causal relation in fact existed, that the failure to give such signal did not in fact contribute to cause the collision, and that it would have occurred even though the signal required by the statute had been given, then it cannot be said, as a matter of law, that the failure to give the signal constituted contributory negligence. *Schmid v. Humphrey,* 48 Iowa 652; *Gross v. Miller,* 93 Iowa 72; *Tackett v. Taylor County,* 123 Iowa 149; *Forsythe v. Kluckhohn,* 150 Iowa 126; *Lockridge v. Minneapolis & St. L. R. Co.,* 161 Iowa 74; *Clark v. Weathers,* supra; *Johnson v. Kinnan,* 195 Iowa 720.

As the appellee's car aproached the intersection, it was going up a grade. The degree of the incline is not shown; but there was testimony that it was not a heavy grade. The testimony of appellee and those riding with him is that he was driving about 20 miles per hour. The young man with him testified that their speed was slackened somewhat by the grade as they approached the intersection, and that, when the north and south road was reached, they were going about 18 miles per hour. One of the young women testified that the cut-out was making a noise. A witness for the appellant, who lived 35 rods south of the intersection, testified that she was in the house; that she heard a car passing, and looked out of the window, and saw appellant going north, just passing the house; and that, almost immediately after he passed, she heard the roar of another car, possibly half a mile east, and then heard it plainer; that she could tell it was coming west at very great speed; and that al-

most immediately she heard the crash of the two cars that ran together. The appellant was driving with the wind shield of his car pushed up and the windows open.

We would not be understood as implying that the driver of a motor vehicle can excuse himself for a failure to give the signals required by the statute, by the noise that his car is making; the duty is statutory and positive, and the failure to observe it is negligence. But when we are asked to say, as a matter of law, that a failure to sound a warning signal required by the statute had a causal connection with a collision that followed,—that the collision would not have happened, had the signal been given,—and there is testimony not only that the approaching car was making a noise, but that it was so great as to be heard by one at a considerably greater distance in the same direction than the one for whose benefit the signal is required, a very different question is presented. Whether a given act of negligence was a proximate cause of an injury is ordinarily a question for the jury. Especially must this be so when there is testimony from which the jury might find that the injury would have occurred although there had been no negligence in the given respect. Except in cases where the facts are clear and undisputed, and the cause and effect so apparent to every candid mind that but one conclusion may fairly be drawn, the question of contributory negligence is for the jury. *Fitter v. Iowa Tel. Co.*, 143 Iowa 689; *McSpadden v. Axmear*, 191 Iowa 547.

In *Clark v. Weathers*, supra, it was held that the failure of the driver of a car about to stop on a bridge, to give a signal of such intention to the driver of a car following, as required by statute, was contributory negligence apparently having causal connection with the collision; and that there was no room to say, from the evidence adduced, that the collision must have occurred, notwithstanding such negligence. In *Corning v. Maynard*, supra, where the driver of a motor cycle depended upon the noise of his cut-out for signals, it was held that his failure to give a warning signal in approaching the top of a hill where his view was obstructed, contributed to his collision with a car at the crest. In both of these cases there was lacking any testimony, such as we find here, from which it could have been

found that the failure to give the required signal was supplied by another circumstance that as unmistakably and as certainly indicated the fact the signal was intended to convey, the approach of the car, as would the signal itself. It is true, no doubt, that the appellant's car was making some noise, and that this fact would render it less likely that he would hear or notice the noise made by another running car; while the sound of a horn or other signaling device, being distinctly different, would be more likely to be heard. And the jury might have found that, although the appellant did not hear the noise of the approaching car, he would have heard and heeded a warning signal, had one been given, and that the collision would thereby have been averted. But can it be said that this so certainly appears, under the circumstances shown in this case, that the question ceased to be one of fact for the jury; can it be said that the minds of all reasonable men must concur that a causal connection existed between appellee's failure to give a signal of his approach and the collision?

Moreover, there was, as will be presently more particularly pointed out, testimony from which the jury might have found that the collision occurred north and west of the center of the intersection, and that appellee's car was within the intersection and in plain view of appellant before the latter entered the intersection.

Section 26 of the act above mentioned provides:

"(i)   Where two vehicles are approaching on any public street or highway so that their paths will intersect and there is danger of collision, the vehicle approaching the other from the right shall have the right of way."

The alleged violation of this statute on the part of appellant is the gravamen of the charges of negligence in the petition; and the statute is also relied upon on the question of contributory negligence.

It being kept in mind that appellee was by statute entitled to the right of way, and that appellant was bound to approach the crossing prepared to yield the right of way to a car coming

from the east, it would clearly be a question for
the jury whether appellant, in the exercise of
ordinary care, ought to have seen appellee's car
in the intersection before he himself reached
it, and in time to have avoided the collision, notwithstanding
any previous negligence on the part of appellee in failing to
sound a warning as he approached the intersecting highway.

3. Highways:
regulation and
use: yielding
right of way at
intersection.

We have no purpose to enlarge or extend the familiar doctrine of the last clear chance, as frequently announced in our prior decisions. That doctrine is applicable where the peril of the injured person, although brought about by his own negligence, is actually known to the defendant; and the latter is held liable for a failure to exercise reasonable care to avoid the injury, and is not excused by the previous negligence of the one injured. But here there was at all times a duty resting on appellant to obey the statutory injunction to yield the right of way to a car approaching from the east,—a duty from which he was not relieved by the failure of appellee to give a signal of his approach. The duty to give the right of way was imposed by statute, and was not at all dependent on the other's neglect or failure to exercise due care, or to observe a statute applicable to him. Whether appellant's failure to perform the statutory duty so imposed on him would create a liability for a resulting injury must depend, of course, upon whether appellee's negligence contributed to his injury. But the statute imposed upon appellant much more than the duty to exercise reasonable care not to injure one of whose peril he was actually aware. He was under the positive duty to yield the right of way, and of necessity was required to exercise reasonable diligence to ascertain if another, with a right over the crossing superior to his, was approaching. Under such circumstances, if appellant had ample opportunity to see appellee's car upon or approaching the intersection, in time, in obedience to the statute requiring him to give the right of way, to have avoided the collision, we think it was a question of fact for the jury whether appellee's failure to sound a signal as he approached the crossing contributed to the collision. If appellant had in fact seen appellee's car in time to have prevented the collision, there can be no doubt that such previous negligence on the

part of appellee would not have barred a recovery. *Frush v. Waterloo, C. F. & N. R. Co.*, 185 Iowa 156. In view of the statutory duty resting upon him to give the right of way, we think it ought not to be said, as a matter of law, that the failure of appellee to give previous warning of his approach to the crossing contributed to the collision, where it might have been found that appellee's car was in plain sight a sufficient time and under such circumstances that, had appellant exercised due care, he could, in obedience to a statute at all times binding upon him, have allowed appellee to pass over the intersection, and have avoided the collision.

The ultimate question here is whether it is our duty to say, as a matter of law, under all the circumstances the evidence tended to establish,—where the jury might have found that appellee's car was making a noise that was heard by one at a much greater distance away than appellant, and in the same direction, and that appellee's car, with the right of way, was in plain view of appellant before the latter reached the intersection,—that appellee's failure to sound the warning signal required of him had a causal connection with the collision. While the matter is not free from difficulty, we are of the opinion that the question was one for the jury, and that with its conclusion we cannot interfere.

III.   Section 26 of the act referred to above provides that:

"Upon approaching * * * a crossing or intersection of public highways * * * and in traversing such crossing, * * * the person operating a motor vehicle * * * shall have the same under control and shall reduce the speed to a reasonable and proper rate."

4. HIGHWAYS: regulation and use: control of vehicle at intersection.

It is contended that appellee violated this statutory provision, and was, therefore, guilty of contributory negligence.

We have said:

"The phrase 'having his car under control' does not necessarily mean ability to stop instanter, under any and all circumstances. Such a rule would be impossible of observance. A car is 'under control,' within the meaning of the law, if it is moving at such a rate and the driver has the mechanism and power under such control that it can be brought to a stop with

a reasonable degree of celerity." *Carruthers v. Campbell,* 195 Iowa 390.

The requirement that the speed of the car shall be reduced to a reasonable and proper rate must receive a reasonable construction. If the car is not traveling at a rate that is, under the circumstances, unreasonable or improper, it obviously is not required that the speed be reduced: the requirement of the statute is a rate of speed that is reasonable and proper under the circumstances.

5. HIGHWAYS: regulation and use: nonreduction of speed at intersection.

As said, there was testimony that, as appellee approached and passed onto the intersection, he was driving at from 18 to 20 miles per hour. The appellee testified that he did not, prior to the collision, make any attempt to stop or reduce the speed by closing the throttle or applying the brakes. He testified that he was traveling on the north or right-hand side of the road; that he did not see appellant's car until he was within 15 or 20 feet of it. He said:

"As I approached the intersection, I looked at the right-hand side of my road, and saw the road was clear. Then I glanced over to the left-hand side, and there was Meusberger's car; and I saw there was no chance to stop and avoid the accident, and saw my only chance was to go on and avoid the accident. I made a little swing there in the road,—just a little swing there towards the north. I was looking straight ahead. I could see the whole width of the road we were traveling on. You can't see very much toward the south there, on account of the cornfield. I couldn't see very much * * * I looked to the north first,—that's my right-hand side. I then looked to the south. When I looked to the south, I saw the car south of the intersection. When I looked to the south after I got to the intersection, I saw Meusberger's car; and my only chance was to make a little swing or sway there in the road to avoid the accident. I think I was then right in the line of the intersection in the traveled part. * * * When the wreck happened, he hit the side of my car, right where I was seated. We kind of slued off into the ditch like, towards the northwest. Slued off towards the northwest; and whether we turned over once and a half or twice, I don't know. It was done so fast. * * * After

he hit, it kind of shoved it towards the north.  After he hit my car, it kind of pushed it towards the north,—kind of shoved it off towards the northwest.  After Meusberger hit us, it kind of swerved.  I may have lost consciousness to a certain extent.''

One of the young women with him testified that appellee was driving a little to the north of the center of the road; that, when he swerved, they were just a little west of the intersection,—the improved part of the road, where the two lines cross; that, at the time they were hit, they were in the northwest quarter of the intersection, about north of the middle line that runs east and west, and a little west of the middle line that runs north and south.  The other girl testified that the appellant's car was 8 or 10 feet away when she saw it; that they swerved to the north just about the time they were hit; and that their car was about at the center of the intersection.  The other young man of the party testified that, when they approached the crossing, they were on the north side of the road, about three and a half feet from the middle line of the gravel; that appellee was inside the intersection about 10 or 12 feet when he swerved to the north.

The left side of appellee's car showed in the body, running board, and rear part of the front fender, evidences of the collision.  Whether the left front fender was bent down in front, was a matter of dispute.  The appellant's car showed evidences of the collision on the right side of the radiator, the right lamp, and fender; and the spindle of the right front wheel was bent.

The appellant, the only other witness of the collision, testified that he did not see the appellee's car until he was about 4 or 5 feet from him, in front of him; and that the collision occurred about 5 feet north of the south line of the gravel; and that the collision was between the front end of his car and the side of appellee's car.  The appellee's car stopped in the ditch on the north side of the gravel road, about 24 feet west of the northwest culvert headblock, after turning over one or more times.  It was lying on its side, and the two right wheels were broken.

The appellee had the right of way over the intersection; but that did not absolve him from the statutory duty to have his

car under control and to operate it at a reasonable and proper rate of speed in approaching the intersection, nor from the common-law obligation to exercise reasonable care under the circumstances. The Supreme Court of Minnesota has said of a similar statute of that state:

"The rule of the statute is one of convenience, and was intended to standardize rights and duties at intersecting highways. It does not absolve one having the prior right from independent acts of negligence at such crossings." *Rosenau v. Peterson*, 147 Minn. 95 (179 N. W. 647).

See, also, *Barnes v. Barnett*, 184 Iowa 936.

But, on the other hand, the fact that one had the superior right over another approaching from his left, is a material circumstance in determining what would be a reasonable and proper rate of speed, and what the exercise of ordinary care required of him.

"The possession of this right does not, of course, justify the possessor in plunging ahead regardless of consequences, nor in failure to exercise ordinary care to avoid injury to others; but the fact is an important one to be considered in deciding the question of negligence. He approaches a crossing expecting, and entitled to expect, that one approaching from the left will recognize his right, and his conduct is to be judged of in view of that circumstance." *Glatz v. Kroeger Bros. Co.*, 168 Wis. 635 (170 N. W. 934); *McCaffery v. Automobile Liability Co.*, 176 Wis. 230 (186 N. W. 585).

Each of the parties had a right to assume, at least in the absence of anything that, in the exercise of reasonable caution, he was required to know to the contrary, that the other would obey the law. *Elgin Dairy Co. v. Shepherd*, 183 Ind. 466 (108 N. E. 234).

See, also, *Pilgrim v. Brown*, 168 Iowa 177; *Wine v. Jones*, 183 Iowa 1166. Appellee testified that the brakes on his car were in good working order.

Unless we shall say that the driver of a car who approaches an intersecting highway at no greater speed than 20 miles per hour, and with such control over his car as that speed and the circumstances shown would indicate, is, as a matter of law, guilty of contributory negligence in respect to a traveler ap-

proaching the intersection from the left, over whom he has the right of way, it cannot be found that the appellant was entitled to a directed verdict on that ground.

As has been said, the jury would have been warranted in finding that appellee, traveling on the north or right side of the road, had reached or passed the center of the north and south road before appellant entered the intersection at all. Upon a careful examination of the record, we find no physical facts so conclusively established as to preclude such a finding. The location of the damaged parts of the two cars would indicate that the collision was between the right side of the front of appellant's car and the middle of the left side of the other; and that, at the instant of collision, the cars were not at right angles to each other; but that appellee's car was moving toward the northwest, as he and his witnesses testified; or that appellant had veered to the west. If the appellee had reached the center of the intersection or beyond, before the appellant entered it, it might well have been found that a slackening of speed on the part of appellee would not at all have lessened the danger, and that his attempt to swerve to the right and away from the approaching car while maintaining his speed was the safer course, and that in so doing he was in the exercise of reasonable care.

We think it cannot be said, considering the evidence in the light most favorable to appellee, as we are required to do, for the present purpose, that appellee was, as a matter of law, guilty of contributory negligence in respect to his speed or the control of his car. The question of contributory negligence, under the record, was one properly for the determination of the jury; and the verdict finds sufficient support in the evidence.

IV. The criticisms of the instructions have to do with those relating to the subject of contributory negligence. The principal complaint is that the jury was told that the failure of the appellee to observe the statutory requirements in the operation of his car would constitute negligence on his part; but that, if such negligence did not contribute to cause the collision, and the collision would have occurred notwithstanding such negligence on his part, then he was not guilty of contributory negligence in such respect. What has been said disposes of this

complaint. The instructions announced the correct rule of law, and were not inconsistent.

V.   Complaint is made of an instruction that set out certain provisions of the statute with reference to the duties of persons operating motor vehicles on the highway, in that it did not specifically refer to the requirement that every motor vehicle should be "equipped with a suitable bell, horn, or other signaling device."

6. TRIAL: instructions: general statement of issues: harmless omission.

An instruction embodying this thought was asked by appellant. The testimony did not show whether appellee's car was so equipped or not. While a failure to comply with the statute in this respect would, as we said in *Corning v. Maynard,* supra, sustain a close relation to the failure to sound a warning signal, in that it would render it impossible for the driver to do so, yet the failure to give a signal was the active and causative negligence, if it was causal in relation to the collision; and the court instructed that the undisputed evidence showed that appellant did not sound a horn, or "sound by any other signaling device his approach to the intersection." The appellant thus had the full benefit of the fact that no signal was given. That it was not shown that there was a signaling device on the car could not have added any certainty to the failure to give a signal, in view of the positive direction of the court that none was given. There was no prejudicial error here.

VI.   Error is assigned on the giving of an instruction that said, in substance, that one operating an automobile on the public highways in the country had a right to drive on any portion of the highway, when not meeting or overtaking other cars, and that, if it was found that plaintiff was on the left-hand side of the road, that fact would not of itself be deemed in law a negligent act; but that plaintiff was required to use ordinary and reasonable care and caution in the operation of his automobile; and that, if it was found that the condition at the place was such that a reasonably careful and prudent person, under such circumstances, would have driven his car on the left-hand side of the road, then, if plaintiff did so drive his car, this would not be negligence; but, if a reasonably prudent person would have been on the right-hand side of the road, and it

7. HIGHWAYS: regulation and use: travel on left-hand side: justification and excuse.

was found that plaintiff was on the left-hand side, he would be guilty of negligence. The instruction was not very happily worded; but it required, if appellee was driving on the left-hand side of the road, an affirmative finding that a reasonably careful and prudent person would, under the circumstances, have driven on that side, to relieve him of contributory negligence in so doing; and this, we think, was the most that appellant could claim in that connection.

It is generally held that the violation of a statute prohibiting a particular act or requiring a particular precaution is negligence *per se*. *Ives v. Welden*, 114 Iowa 476; *Burk v. Creamery Pkg. Mfg. Co.*, 126 Iowa 730; *Hough v. Illinois Cent. R. Co.*, supra; *Corning v. Maynard*, supra; *Girl v. United States R. Adm.*, supra; *Faatz v. Sullivan*, 199 Iowa 875. But this is not the rule with respect to the so-called "law of the road," found in statutes and ordinances requiring users of the highway to travel upon a particular side of the road under certain situations or in certain localities. On the contrary, it is recognized that the whole highway is for the use of the traveler; and that, even in a situation when the statute requires him to proceed upon a particular part of the highway, the circumstances may be such as to excuse his failure to do so; and that the violation of such a regulation is only prima-facie negligence. *Hubbard v. Bartholomew*, 163 Iowa 58; *Herdman v. Zwart*, 167 Iowa 500; *Wagner v. Kloster*, 188 Iowa 174; *Powell v. Alitz*, 191 Iowa 233; *Johnson v. Kinnon*, supra; *McElhinney v. Knittle*, 199 Iowa 278.

This distinction may not have been expressly pointed out in all cases where references to the subject are to be found; but it is substantial and controlling, and its observance will explain what may otherwise appear to be conflicting statements of the rule.

For the error pointed out, the judgment is reversed, and the cause is—*Reversed and remanded*.

EVANS, STEVENS, ARTHUR, DE GRAFF, and ALBERT, JJ., concur.