IN RE ESTATE OF FLOYD H. GREEN.

GEORGE H. DENNY, Appellant, v. GLADYS CONNER GREEN, Administratrix, Appellee.

No. 44192.

MARCH 15, 1938.

Jones & White, Bailey C. Webber, H. S. Life, and C. J. Lambert, for appellant.

Robert J. Shaw, for appellee.

STIGER, C. J.—Plaintiff brought this action to recover damages for injuries to his person and property growing out of an automobile collision between the plaintiff and the defendant's intestate on July 28, 1936, about 4:00 o'clock in the afternoon. The collision occurred in the intersection of two township roads. Plaintiff was approaching the intersection on the east and west highway from the east in his V-8 Ford sedan driven by his son, Waldo Denny. The defendant's intestate, Floyd H. Green, was driving his Terraplane automobile south on the north and south road approaching the intersection from the north. The collision occurred on the west side of the intersection. At the close of the plaintiff's testimony, defendant filed a motion for a directed verdict. The grounds of the motion material to this appeal are as follows:

"(1) Because the plaintiff has wholly failed to show by a preponderance of the evidence that the plaintiff and claimant was free from contributory negligence.

"(2) Because the record affirmatively shows that the plaintiff and claimant was negligent and his negligence contributed to injury complained of.

"(3) Because the plaintiff and claimant did not use ordinary care in his use of the highway, at the time and place in question.

"(4) Because there is absolutely no showing or attempt to show that the failure on the part of the plaintiff and claimant

to sound a signalling device did not cause or contribute to cause the accident in question, and the resulting damage.

"(5) Because the undisputed evidence is that the plaintiff's and claimant's car did not sound an adequate signalling device required by the laws of the State of Iowa as to approaching the intersecting highway, where the collision occurred, where his view was obstructed and where he was familiar with obscurity existing at said intersection."

The motion was sustained on the ground that plaintiff was guilty of negligence which contributed directly to the injuries complained of as a matter of law. In his statement to the jury, the trial court said:

"This is not a question as to whether or not the driver of the Terraplane was negligent, as to that there is sufficient evidence to go to the jury, but it is a question as to whether or not the plaintiff, as it is his duty under the law, has shown that he was free from any negligence that contributed to the injury. The Court thinks and there is no evidence before the Court, that if such a signal had been given by the claimant's car at a reasonable time before entering the intersection, such signal might or would have warned the car approaching from the north, and therefore that the failure to sound the signal in some degree directly contributed to the injuries, and under the law in our State, if that is true, there can be no recovery by the claimant or plaintiff as against the defendant. Therefore, the Court has sustained the motion for a directed verdict in this case."

The sole question before us for determination is whether the trial court erred in holding that the plaintiff was guilty of contributory negligence as a matter of law. North of the intersection the north and south highway is level for a distance of about 225 feet. It then proceeds north on a rather abrupt downgrade for some distance and then continues north on an upgrade. Looking north from the east side of the intersection a car can be seen for a distance of about 275 feet. There is then a distance of about 250 feet north where a car is not visible from the intersection. A car approaching from the north and down the upgrade could be seen 528 feet from the intersection and would then be invisible until it reached a point about 275 feet from the intersection.

Code section 5043 provides that an adequate signalling device shall in all cases be sounded on approaching intersecting highways in the country where the operator's view is obscured.

■■■ It is conceded that Waldo Denny, who was driving plaintiff's car and was familiar with the intersection, did not sound the horn as he approached the intersection and that his view as he approached the intersection was entirely obscured, it being impossible to see a car approaching from the north because of a cornfield and trees in the northeast corner of the intersection. This violation of Code section 5043 constituted negligence per se, and the question is whether, under the circumstances, it can be said that this negligence was contributory negligence as a matter of law.

There was a clear view to the north from the time plaintiff's car reached the east edge of the intersection. Plaintiff testified that he first looked north when in line with a grader ditch on the east side of the north and south highway, and at that time there was no car in sight. He then looked south and observed no car approaching. He again looked to the north when his car was about in the middle of the intersection, at which time he saw defendant's car, which was then about 150 feet north of the intersection, approaching the intersection at a speed of from 70 to 80 miles per hour. When he first saw the car he thought they could get through the intersection before defendant's car would reach them. When the plaintiff's car entered the intersection it was travelling at a speed of 5 or 6 miles per hour. Plaintiff's car travelled about 33 feet from the time the witness first looked north until the collision occurred. The witness further testified that his car travelled about 18 feet between the two times he looked north; that the Green car came toward him in a straight line until it was about 50 feet away, and then seemed to turn to the west, and struck his car at an angle back of the front wheel. It was about 40 feet across the intersection.

Waldo Denny, son of the plaintiff, and driver of the car, testified that he was very familiar with the intersection; that as he approached it his view to the north was entirely obscured by trees and a cornfield, and he consequently reduced his speed to from 5 to 10 miles per hour, taking precaution to see that no one was coming. When he reached the east side of the intersection, he looked north and no car was visible. He stopped

looking north when the front bumper of the car was at the center of the intersection. From there on he looked straight ahead and at no time saw the Green car. Because of injuries, the witness remembered nothing that occurred after his car passed the middle of the intersection. There were deep gouged-out places in the intersection about 6 feet west of the right wheel tracts of a car going south across the intersection. One witness, who lived a mile and a half north of the intersection, testified for the plaintiff that he was at his home on the west side of the north and south road on the day of the accident; that he observed the Green car travelling south toward the intersection for a distance a little less than a mile; that when the Green car went past his home it was travelling at a speed of 70 miles an hour and he heard the roar of the car until it went out of sight about a mile down the road; and that the car maintained the same speed until it went out of sight. Another witness, Avis Hogan, who lived about three quarters of a mile north of the intersection, testified that she observed the Green car going by her home south toward the intersection on the day of the accident. She testified:

"I was standing at the kitchen window. The thing that attracted my attention to the Green car was the sound of the motor and the way it came and I darted to the window to see what it was. When I first heard it, I did not know whether it was an automobile or an airplane, but it was a motor. It is my judgment that the Green car was travelling more than 60 miles per hour when it passed our house."

John Hogan testified that there was a hayrack standing on the east side of the north and south road leaving a width of about 8 feet in the highway in which a car could be driven. The witness stated:

"The thing that first attracted my attention to the Green car was the thought of a man trying to get through this space at the speed he was going. The Green car was roaring considerably. I could hear the roar of the motor after it passed. I would not attempt to give in miles per hour how fast the Green car was travelling."

Other witnesses testified that there were deep skid marks

6 or 8 feet west of the west track of the north and south road in the intersection.

Any contributory negligence on the part of Waldo Denny is imputable to the plaintiff. It was the duty of Waldo Denny to sound the horn as he approached the intersection. If he had complied with this duty, the Green car would have been at least 300 feet north of the intersection. Mr. Green was driving a sedan type of car at a speed of from 70 to 80 miles per hour. The roar of the motor was heard by residents along the highway. The evidence shows that this high speed was maintained to the very place of the accident. If the horn, if sounded, could not have been heard by Mr. Green, the failure to comply with the statute would not of course have contributed in any degree to the injuries complained of. Under these circumstances, it does not appear so certain that Mr. Green could have heard the signal, if given, that the question was not one for the jury. As there was evidence tending to show that the negligence complained of did not contribute to cause the collision, the determination of the question was for the jury.

■■■ While the motion for a directed verdict was sustained primarily because of the failure to sound a signal device, we have considered the contention that plaintiff did not use ordinary care at the time and place in question which negligence constituted contributory negligence. When the plaintiff's car entered the intersection, the Green car was not visible and must have been over 275 feet from the intersection. The speed of the car was reduced as it approached the intersection to about 15 miles per hour and proceeded across the intersection at from 7 to 10 miles per hour. As they entered the intersection, plaintiff and Waldo Denny looked in both directions for approaching cars. The plaintiff testified that when he saw the Green car 150 feet north of the intersection he thought that he could continue across in safety and therefore did not warn the driver. The collision occurred on the west side of the intersection. In a fraction of a second more the plaintiff's car would have been safely out of the way of the oncoming car. The Green car was travelling approximately 110 feet per second and less than two seconds elapsed from the time the plaintiff first saw this car until the collision occurred. The plaintiff's car was travelling about 10 feet per second.

We are of the opinion that the question of the contributory

negligence of the plaintiff and Waldo Denny under said ground for a directed verdict was for the jury.

It is not so apparent that plaintiff was guilty of contributory negligence that it may be said that such conclusion is the only one that can be fairly drawn from the evidence.

The jury might have found that the failure to give the signal required by the statute did not constitute contributory negligence. The jury could also have found in regard to the ground for a directed verdict that the plaintiff did not use ordinary care that plaintiff was not guilty of contributory negligence. Such findings would be reasonable inferences from the evidence adduced by the plaintiff. See Huffman v. King, 222 Iowa 150, 268 N. W. 144; Heacock v. Baule, 216 Iowa 311, 249 N. W. 437, 93 A. L. R. 151; Lane v. Varlamos, 213 Iowa 795, 239 N. W. 689; Carlson v. Meusberger, 200 Iowa 65, 72, 204 N. W. 432, 435.

In the case of Carlson v. Meusberger, supra, we stated:

"Except in cases where the facts are clear and undisputed, and the cause and effect so apparent to every candid mind that but one conclusion may fairly be drawn, the question of contributory negligence is for the jury."

There being evidence tending to establish plaintiff's freedom from contributory negligence, the motion for a directed verdict should have been overruled.—Reversed.

KINTZINGER, DONEGAN, ANDERSON, SAGER, and MILLER, JJ., concur.