J. H. WAMBEAM, Appellant, v. EDWARD HAYES, Appellee.

MAY 15, 1928.

*J. D. Liffring* and *Thomas & Thomas*, for appellant.

*C. A. Pratt* and *Willett & Willett*, for appellee.

ALBERT, J.—Motion to direct a verdict at the close of all of the testimony was sustained in this case on two grounds material to our consideration: (1) That the defendant was not guilty of negligence, and (2) that plaintiff. was guilty of contributory negligence.

As to the first ground, to wit, that defendant was not guilty of negligence, we have to say that the court erred in so ruling, because a slight review of the testimony shows beyond doubt that the question of the negligence of the defendant was a jury question. As to the ground of contributory negligence, serious attention must be given thereto.

To the end that the situation in this case may be fairly understood, we attach herewith a plat, showing the scene of this accident.

Primary Road No. 59 runs in a northerly and southerly direction, and is intersected at right angles by Primary Road No. 58, coming from the west. From this point thence easterly, the road continues as a township road. Plaintiff and his wife approached this intersection from the west, about 9:30 on the evening of August 8, 1925, while the defendant, driving his automobile, approached the same intersection from the north, going in a southerly direction. Reference to the plat shows that the two corners on the west side of No. 59 had been rounded, for the turns to be made onto No. 58. The collision occurred on Road 59, at a point somewhere from 45 to 50 feet north of the center line of Road 58. The evidence is in dispute as to whether it occurred on the east side of the center line of No. 59, defendant claiming that at all.times he was on the right-hand side of said center line, and that plaintiff crossed diagonally, and struck his car, while plaintiff claims that he was on his right side of

the road, and that defendant drove his automobile into plaintiff's car.

It goes without saying that, if plaintiff had been on the right side of the road, and defendant on the wrong side, there

could be no question as to defendant's negligence. Defendant's contention, however, is that plaintiff, in passing from Primary No. 58 onto Primary 59, did not pass the intersection of these two primary roads before turning to the north, and that he thereby contributed to his own injury.

There is much dispute in the arguments as to what should be considered the center of this intersection; but, so long as the accident occurred some 50 feet north of the point that defendant claims to be the intersection of these two roads, under plaintiff's testimony it seems to us to be immaterial whether or not the plaintiff gave attention to the center intersection. Because of the admitted fact as to the point where the accident occurred, and the testimony on behalf of the plaintiff, which we shall later refer to, if plaintiff's contention be true, it is immaterial which of the points in dispute shall be considered the center of this intersection.

The testimony of plaintiff's wife, referring to Primary No. 59, is:

"When we entered the intersection, we saw the lights of the Hayes car, a long way down the road. They were not near by. We noticed that it seemed to be coming across the road,—just cutting across. I could see from its lights it was cutting across the road. We were on the east side of the road as we were turning north, and then he ran into us. The car hit into us on the left side of our car."

Mrs. Wambeam was thrown from the car, near the ditch on the right-hand side of the road. She referred to a conversation between the defendant and her husband, and says:

"My husband asked him why he was not on his own side of the road, and he said, 'I was not going west; I was going south.'"

As to a conversation later, between her husband and the defendant, she testified:

"One thing he told my husband was that he thought the rules were different in the country. My husband asked him if he knew the traffic rules, or had seen them, and he said, 'No.'"

She testified, on cross-examination:

"We came along what you call the intersection, to get around the center of the road. We were coming from the west toward the east. I think we proceeded to the east to the intersection of the two roads before endeavoring to turn north. I mean by the intersection, when you come into the other road. When we first saw the lights, we were headed east, and were going to turn as we entered it. I don't know whether it was 50 feet west of the intersection where we turned to the north.

After the cars came together, our car was standing a little to the northeast—just in a northeasterly direction. My husband was not proceeding in a northeasterly direction, driving his car, cutting the corner at the time. He was going in a northerly direction. We had made the turn. We were already headed north. I think we have to go around the intersection point in making the turn. After my husband entered the intersection, he swung around in a northerly direction, turning around like anyone would turn into the intersection. He came into the intersection point and passed it, and then turned toward his left to the north. After I was thrown out of the car, I was on the side next to the ditch, pretty close to the ditch. There certainly wasn't much space between our car and the shoulder toward the ditch as it stood after the accident. I remember, after we made the turn, or approached the place of the accident, of seeing the shoulder of the ditch to the right. It was pretty near on our right, and Mr. Hayes's car was on our left, and approached us on our left side all the time we were making the turn.''

Plaintiff testified, with relation to this matter:

''As we approached the intersection that night, we came into the circle there on the south side of the road, and as soon as I got into the circle, I saw a light north, and I watched that light, and gave a big turn, so as to get around that light that was coming south; and when I turned north, I noticed he swung right into me. As he swung toward me, I noticed that I was pretty near, as near to the edge of the road as I could get, and I swung my car,—gave it a big jerk, thinking we could beat him; but he came right toward me. I noticed the ditch on the right side of the road as I turned north. As he approached on my left, I turned in a northerly direction.''

He further testified:

''After they got out of the car, Hayes came up, and the first thing I remember, he said, 'What do you want away over here?' I answered that he chased me over here. He said, 'Why, you had over 60 feet over there;' and I said, 'That was your side of the road,' and he said, 'I wasn't going west; I was going south.' ''

In a later conversation with Hayes, the witness testifies:

''I asked him if he knew the traffic rules, and he said, 'No.' Then I said, 'You know that I had the right of way,' and he

said it was different in the country than what it was in town. I was clear to the side of the road, because I was right close to the edge of the ditch, or where the gravel ended.''

The witness Kerr testifies that, after the accident at the scene thereof, the Hayes car was about 45 feet north of the intersection of the highways. Referring to the location of defendant's car, he says there was sufficient room on the east side of 59 to pass,—by real careful driving it could have been done.

The substance of this testimony on behalf of the plaintiff, if it is to be believed (and that is a question for the jury), is that plaintiff's car was headed north on the east side of No. 59, close to the edge of the ditch. Under this record, the court was not warranted in holding, as a matter of law, that plaintiff was guilty of contributory negligence. A determination of such facts by the court as a matter of law necessarily must take into consideration the fact that, under the statute, plaintiff had the right of way; also the fact that plaintiff had a right to assume that defendant would grant him the right of way, according to law. *Carruthers v. Campbell*, 195 Iowa 390; *Carlson v. Meusberger*, 200 Iowa 65. As sustaining our rule on the question of contributory negligence, see cases cited above, and *Codner v. Stowe*, 201 Iowa 800.

If plaintiff's car had reached the easterly side of the north and south road, where it rightfully belonged, when he was struck  by the defendant's car, his negligence, if any there was, by failing to pass beyond and to the right of the intersection, did not contribute to his injury. If, on a retrial of the case, it should become necessary to submit the question as to the location of the intersection of these roads, it is, in its final analysis, a question for the jury, under the instructions of the court. See 1 Blashfield's Cyc. of Automobile Law 464; *Hensen v. Connecticut Co.*, 98 Conn. 71 (118 Atl. 464); *Bartlett v. Hammond*, 76 Colo. 171 (230 Pac. 109); *Fournier v. Zinn*, 257 Mass. 575 (154 N. E. 268).

As we view the evidence in this case,—a part only of which has been set out and referred to,—we reach the conclusion that the court should have submitted the case to the jury.—*Reversed.*

STEVENS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.