In this suit the plaintiff seeks to recover judgment against the defendant in the sum of $350, the alleged purchase price of a truck which he avers he sold the defendant on October 1, 1942 and on which the latter was to pay him the sum of $150 cash and give him eight notes of $25 each payable monthly thereafter. He alleges that the defendant has not paid any part of what he owes him and that as under the law he has a vendor's lien and privilege on the truck itself he is entitled to an order for a writ of sequestration. The sequestration was ordered and in due time it was bonded by the defendant. We now have nothing before us except an issue of fact as between the plaintiff who contends that he sold the truck to the defendant for the amount he states, and in addition thereto the assumption of $350 balance remaining due on the original chattel mortgage notes given when the truck had been first sold through a finance company, and the defendant who, on the other hand, contends that the truck was turned over to him merely on his assumption of the payment of the mortgage notes remaining due.
As we understand the matter, the present defendant Nat. Clark bought this truck from the De Ridder Motor Company, January 10, 1942, paying $250 cash and giving his notes for the balance of $714 payable one each in the twelve months following their date. Clark kept the truck for several months and sometime about the month of June, after he had paid four notes, sold it to a man by the name of Howard. Howard paid him $50 cash and assumed the payment of the balance of the notes due. So far the facts are not disputed but from then on the testimony is but one mass of conflict as to dates and as to payments made on the notes.
Howard did not keep the truck very long and sold it to the plaintiff herein, Elbert Reeves. Reeves, in testifying, says that he bought it from Howard in June, 1942. Howard, when he was testifying said that he bought it from Clark on June 1, 1942. Such conflict would be immaterial were it not for the fact that it has a direct bearing on the question as to how many of the notes were paid between June and September, 1942, when Reeves again sold the truck to Nat. Clark. The plaintiff says he paid the three notes of June, July, and August. Howard says that he paid one note on which he was in arrears and the one due on June 8th. All of that is so contradictory that it is impossible to say which of the two paid any particular note. However, Howard does state that he sold the truck to Reeves for $150 and the assumption of the notes remaining due, about July 1, 1942, at which time he says further there was "nary a note due on the truck." He states further that the July note was paid, that he and Reeves went to the Post Office and paid it, or rather that he paid it and Reeves paid him back. If that is in any way correct, then it may be that Reeves did pay the August note and if he did *Page 224 
not sell the truck to Clark until September 21, 1942, he might have also paid the note that was due on the 8th of that month. At any rate he says that when he sold it to Clark he believes that there was a little over $200 balance due on the notes. Clark's testimony on the contrary is that when he took the truck back there was a balance of $350 due on the notes including the August note which was paid by him.
There is no dispute however of the fact that Reeves did transfer the truck to Clark sometime in the month of September, 1942, and he produced one witness to support his statement that in addition to assuming the balance due on the notes, Clark agreed to pay him $150 cash and $250 in notes. If the balance was anywhere what Clark says it was at the time, it would have meant that Reeves, according to his contention, was selling him the truck for $700 and that he would be about getting back what he had paid on it and making a small profit of around $50 on the deal. That is the way in which the district judge viewed the situation and he rendered judgment in favor of Reeves, whereupon Clark took this appeal.
As we have already stated, the testimony is so admittedly conflicting and confusing that it is hard to reach a definite conclusion one way or the other. In such a situation the rule is that great weight must be given to the findings of the trial judge who is in a better position to balance the testimony than the appellate court. We find in the record, a written opinion of the trial judge who, although not discussing the testimony in any detail, accepted the plaintiff's version of the transaction and stated that it appears only reasonable that this man would have at least tried to get back the money he paid out on the truck and make a small profit as both Clark had made on Reeves and Howard had made on him.
The defendant of course denies Reeves' version of the transaction and he produced his son as a witness to support his side of the case. But we agree with the trial judge that it does look plausible that Reeves should have tried to get something out of the truck just as the others did when they sold it. The truck was sold new in the month of January, 1942, and therefore when it was sold back to Clark in September, had had about eight months service. It is a matter of common knowledge, that from and after the time it became almost impossible to buy new automobiles and trucks for civilian use, the price of secondhand motor vehicles began to increase very materially and because of the limited supply available their value as secondhand vehicles became almost as great as when they were new.
We have concluded that the trial judge correctly held that there was a bona fide sale of the truck from the plaintiff to this defendant for the amount stated and on the terms agreed upon and that the plaintiff is entitled to recover. If we make any error in the case it will be at the cost of an error committed by the trial judge but certainly, in our opinion, it is not so manifest that we are able to point out what it is.
Judgment affirmed.