FRANK GOLDAPP, Appellant, v. HERMAN CORE, Appellee.

No. 46696.

JULY 27, 1945.

Kimball, Peterson, Smith & Peterson, of Council Bluffs, and G. C. Wyland, of Avoca, for appellant.

Frank P. Brennan, of Avoca, for appellee.

MILLER, C. J.—█ The collision which produced this litigation is alleged to have occurred at night on paved Highway U. S. 6 about four miles east of Oakland, Iowa, on June 9, 1943. Plaintiff's International tractor and trailer was proceeding east on the highway preceded by defendant's Ford V-8. Defendant undertook to make a left-hand turn off the paved highway onto a county dirt road. The vehicles collided at or near the intersection. Plaintiff brought an action to recover his damages, consisting of $2,500 damage to the tractor, $1,000 damage to the trailer, and $1,000 for loss of use of the equipment. Defendant filed a counterclaim for his damages, consisting of $406.80 damage to his car and $600 for the loss of its use. At the close of the evidence each party made a motion for a directed verdict as to the claim asserted by the other. Both motions were overruled and the cause was submitted to the jury, which returned a verdict in favor of defendant on his counterclaim in the sum of $428.05. Plaintiff appeals. The

four errors assigned all relate to the ruling on the motion for a directed verdict on defendant's counterclaim.

There were only two eyewitnesses to the collision: Bruce Quick, who was driving plaintiff's equipment, and defendant Core, who was operating his Ford V-8. Quick testified that he came up behind defendant's Ford V-8 and attempted to pass it. He testified, in part, as follows:

"I was driving a truck of Frank Goldapp to Chicago on June 9, 1943, left Council Bluffs around 8:30, it was raining, it was misty and foggy. * * * I flashed the light and blew the horn. His car went ahead on the right side of the road, and I continued to pass on the left. At the time I got even with the driveway on the Timmerman farm I had about 2 to 3 feet of the tractor on the back corner of the car, and he gradually pulled to the center of the road. I then applied the brakes lightly and pulled the left front wheel on the left shoulder. Then pulled back on the pavement behind him. After I had given the signal, and just as I started to pull over, I saw his hand, and I pulled back to the pavement. He gradually went on the right side of the street, of the pavement, to the left. I went to pull over on the right side of the pavement but because of the mud on the pavement I couldn't hold the outfit straight, but coming off the edge of the shoulder I had the load flopping, and it started to jackknife, and I hit the Ford V-8, its side, about 4 inches in on the trunk, to the right side, with the left front fender of the tractor. At the time of the collision the Ford was about two-thirds of the way on the left-hand side of the pavement. No part of the Ford was off the pavement at the time of the collision. * * * I hit him west of the intersection about three to four rods. * * * I claim the collision occurred four or five rods west of the west edge of the intersection. I struck him when he was about in the center of the highway. * * * I never seen his hand until I was up by the side of it. * * * As we drove past the bridge west of the Timmerman place the lights were on low beam. They were used sometimes in fog or mist. It was on low beam except when I flashed for a passing warning. * * * The high light made a glare ahead. It wouldn't penetrate. * * * When I tried to pass him the

second time I was traveling 30 to 35 miles. That was east of the spillway about 75 to 100 feet. * * * As I was about to pass the Herman Core car he started to decreasè his speed as he pulled for the left sidè of the road. As he did I pulled to the shoulder and slowed up. The Core car slowed up more at that time than my truck.''

Defendant Core testified, in part, as follows:

''That night I observed lights of a vehicle following me. It had just come over the hill behind me about 70 rods. The hill is approximately 70 rods west of the bridge. As I crossed the bridge I was driving south on the right-hand side of the pavement. Right away as I crossed the bridge, I put out my hand. I would say I put out my hand a couple rods west of the spillway on the south side, in my best estimation. I continued to put out my hand as I drove east until I got turned around the corner on the county road going north. I extended my hand straight out, through the window. I put the window down, just after I crossed the bridge. I didn't notice any car from the rear blinking its lights. I didn't hear any sounding of any horn, until I changed the direction and course of my car. * * * I turned the corner not exactly square, but as near square as I could, to hit that road in the center, because the road was real muddy, and as the hind wheels went over the curb, I was struck. Next thing I knew I was in the ditch. * * * I would say I was about 30 feet west of the intersection when I made the angle to cross. * * * Q. Where was your car when you saw the lights come over the hill? A. Just ready to cross the bridge. * * * I drove along there on the south half until about 30 feet of the intersection * * * I am sure that my car was off the pavement when it was hit. I say that the truck hit the left fender on the left side of the car, on the fender back of the left rear wheel. I am absolutely sure about that, and couldn't be mistaken. * * * license number was 78-2828. It is absolutely not a fact that the collision with my car was on the right side of the rear portion of my car.''

On cross-examination, defendant Core testified that after he saw the lights of plaintiff's truck behind him about seventy

rods, as he was about to cross the bridge, he did not notice the truck any more, did not look to see where the truck was after that, how close it was to him, whether it was behind him or out to the side, paid no attention to its lights at all, did not look in his rear-vision mirror at any time.

There were various witnesses that testified concerning statements of Bruce Quick after the accident. Core testified that Quick said:

"I seen your hand, but I seen it too late to do anything about it. * * * I started to go behind you, and I went on over the curb at the south side, and I come back to the north side, and that is when I hit you."

Another witness testified:

"I heard Bruce say he didn't see Mr. Core's hand until it was too late."

Another testified that Quick said he did not see Core's hand in time, and he was all over the road. Another testified:

"I heard Mr. Quick say that that night he was coming up the road, and saw the car and didn't know what to do. He weaved back and forth on the road, he was clear over on the south shoulder and then the north shoulder."

Another testified:

"He also told me he didn't see Herman's hand until it was too late."

There was a great deal more evidence, of course; but the foregoing extracts should suffice for the purpose of our decision herein.

I.  Appellant's first assignment of error asserts that the court erred in overruling his motion for a directed verdict on the counterclaim because appellee was shown to be guilty of contributory negligence as a matter of law in that he failed to comply with section 5025.04, Code, 1939, which required him to first ascertain whether he could change the direction of his automobile in safety, failed to look in his rear-vision mirror to ascertain the location of the vehicle he knew was following

him to make sure that he could make the turn in safety. The third assignment of error asserts that appellee was shown to be guilty of contributory negligence as a matter of law because he did not keep a proper lookout. As these two assignments relate to the same evidence, they will be considered together. In considering the questions thus raised, of course, we are mindful that the evidence must be considered in the light most favorable to appellee. When it is so considered, we find no merit in appellant's contentions.

Appellee relies upon statements contained in the case of Enfield v. Butler, 221 Iowa 615, 624, 264 N. W. 546, 551, wherein we stated:

"The general rule as laid down by our decisions is that, 'except in cases where the facts are clear and undisputed, and the cause and effect so apparent to every candid mind that but one conclusion may fairly be drawn, the question of contributory negligence is for the jury.' Carlson v. Meusberger, 200 Iowa 65, 72, 204 N. W. 432, 435. There being a direct conflict as to the point of the accident, the question of contributory negligence in this case under the facts is necessarily one for the jury, for it is manifest that, before the court could sustain a motion to direct a verdict for the defendants, it would have to find as a matter of law that the accident occurred while the deceased's car was still on highway No. 6, whereas in this case there is a direct conflict in the evidence on this point.

"The facts in this case bring it squarely within the rule announced in Wambeam v. Hayes, 205 Iowa 1394, 1399, 219 N. W. 813, 816, wherein this court said:

"'If plaintiff's car had reached the easterly side of the north and south road, where it rightfully belonged, when he was struck by the defendant's car, his negligence, if any there was, by failing to pass beyond and to the right of the intersection, did not contribute to his injury.'"

Applying the foregoing pronouncements to the testimony herein, counsel for appellee contends that the point of collision between the two vehicles is decisive. He contends, in effect, that the jury was warranted in finding, from the testimony of

appellee, Core, that appellee drove his car on the south, or right-hand side, of the pavement until he was about thirty feet from the intersection, and, from the testimony of the appellant's driver, Quick, the jury could have found that the impact between the two vehicles occurred when they were from three to five rods west of the intersection; therefore, at the time of the collision, appellee's car was where it had a right to be and any failure to strictly comply with any requirement for appellee's maintaining a lookout could not have been a contributing factor to the collision of the vehicles.

Appellant's counsel seek to meet appellee's contention by asserting in their reply brief, as follows:

"If the defendant is going to base his defense upon Bruce Quick's testimony, then he should not single out one phrase, but adopt and accept the testimony of Bruce Quick as to how the accident occurred."

We cannot agree with appellant's argument. The jury could believe part of Quick's testimony and part of Core's in determining the facts.

If, however, the jury did not accept Quick's version as to the place of collision, but accepted Core's testimony that his car was practically or entirely off the pavement when struck, then, under the rule applied in Wambeam v. Hayes, 205 Iowa 1394, 219 N. W. 813, above quoted, any failure of Core with respect to maintaining a lookout would not have been a contributing factor to the occurrence of the collision.

In other words, appellant's contentions assume that the collision occurred while Core was changing the direction of his car, and that he did so without maintaining a proper lookout. However, the jury could have found that the collision occurred either before he started to turn, or after he had completed the turn. In either case, the jury would be warranted in finding that the collision occurred because Quick failed to observe Core's signal for a left turn in time and, in attempting to extricate himself from his predicament, Quick lost control of the equipment that he was operating and that no negligence of Core's contributed to the collision.

By reason of the foregoing, we need not discuss, decide, or even indicate whether Core was in fact negligent, because, in no event was the jury required to find, as a matter of law, that his operation of the car contributed to the collision of the two vehicles in such a manner as to defeat his right to recover on the counterclaim.

■ II. Appellant's second assignment of error asserts that the court should have directed a verdict on the counterclaim because appellee's failure to comply with the requirements of section 5025.01, relating to making a left turn at an intersection, rendered him guilty of contributory negligence as a matter of law. This contention is without merit for the same reasons assigned in Division I, supra. Under the record, the jury could have found that the collision occurred either before Core started to make his left turn, or occurred after the left turn had been completed and his car was practically or entirely out of the intersection. In either event, the jury would be warranted in finding that Core's operation of his car did not contribute to the occurrence of the collision in such a manner as to defeat his right to recover herein. Wambeam v. Hayes, supra.

■ III. Appellant's fourth and final assignment of error asserts that a verdict should have been directed on the counterclaim because the evidence showed, without conflict, that appellee failed to heed Quick's signal of his intention to pass and appellee failed to meet the burden of proof that he did not hear the signal. Here again the contention fails because the jury was warranted in finding that the collision occurred at a time when Core's car was where it had a right to be and that the collision resulted from Quick's failure to see Core's signal in time and the fact that thereafter Quick lost control of the equipment he was operating.

Since we find no merit in the four assignments of error asserted by appellant, the judgment must be and it is affirmed. —Affirmed.

All JUSTICES concur.