EMIL FISCHER, Appellee, v. HAWKEYE STAGES, a corporation, Appellant.

No. 47382.

(Reported in 37 N. W. 2d 284)

MAY 3, 1949.

REHEARING DENIED SEPTEMBER 23, 1949.

Minnich & Minnich, of Carroll, for appellant.

Rudolph & Rudolph, of Atlantic, and White & Bruner, of Carroll, for appellee.

GARFIELD, J.—Defendant's principal claim to a reversal is that plaintiff was guilty of contributory negligence as a matter of law. Of course it is our duty to consider the evidence in the light most favorable to plaintiff.

Plaintiff was driving his 1937 Oldsmobile sedan south on paved U. S. Highway 71 about two miles south of Templeton when it was struck from the rear by defendant's bus also traveling south. Before the collision, when plaintiff was ahead of the bus a distance variously estimated from twenty-five to one hundred feet, plaintiff had started to turn left to enter a farm lane on the left (east) of the highway. About this time the bus driver signaled with his horn his intention to pass the sedan. Upon hearing the signal plaintiff, who had not known the bus was following him, turned his car back into the right (west) lane. The bus also turned to the right and its left front struck the right rear of plaintiff's sedan.

Trial resulted in verdict and judgment for plaintiff for $2000 from which defendant has appealed.

The claim of contributory negligence is mainly based on plaintiff's violation of statutes which required him to signal his intention to turn. So far as applicable here, sections 321.314, 321.315, and 321.318, Code, 1946, provide:

"No person shall turn a vehicle from a direct course * * * unless and until such movement can be made with reasonable safety and then only after giving * * * an appropriate signal * * *.

"* * * continuously during not less than the last one hundred feet traveled by the vehicle before turning.

"* * * 1. Left turn.—Hand and arm extended horizontally."

Both plaintiff and his wife, who was riding with him, testify plaintiff gave the signal for a left turn before the turn was started but do not say the signal was given continuously during the last one hundred feet before such start. Plaintiff also says he looked in his rear-vision mirror before he gave the signal but saw nothing. The bus, which was late at the time, was traveling about twice as fast as the sedan. The relative speeds were about forty to forty-five and twenty to twenty-five miles per hour.

I. At defendant's request this interrogatory was submitted to the jury: "Did plaintiff give a continuous signal for the last 100 feet of his intention to turn his car before he did change the course of his car?" The jury's answer was "No." Defendant contends this answer is irreconcilable with the general

verdict for plaintiff, conclusively establishes contributory negligence, and therefore defendant was entitled to judgment notwithstanding the verdict or in any event to a new trial. The contention, for which no authority is cited, cannot be sustained.

Rule 206, Rules of Civil Procedure, quite similar to the statutes it supersedes, provides that if a general verdict and answers to interrogatories "are harmonious, the court shall order the appropriate judgment. If the answers are inconsistent * * * with the general verdict, the court may order judgment appropriate to the answers notwithstanding the verdict, or a new trial, or send the jury back for further deliberation."

All the jury found by its answer to the interrogatory is that plaintiff did not (to quote from the interrogatory) "give a continuous signal for the last 100 feet of his intention to turn his car before he did change" its course, as required by Code sections 321.314 et seq. The jury did not find no signal was given showing plaintiff's intention to turn nor that failure to signal continuously for the last one hundred feet contributed directly to cause the collision. The special finding is thus obviously insufficient to defeat, as a matter of law, plaintiff's right to recover on the theory of contributory negligence. See Schulte v. Chicago, M. & St. P. Ry. Co. (Ladd, J.), 114 Iowa 89, 93, 86 N. W. 63, and citations; 64 C. J., Trial, section 965.

By its general verdict the jury necessarily found plaintiff's failure to signal continuously for the last one hundred feet did not directly contribute to the collision. See Case v. Chicago, M. & St. P. Ry. Co., 100 Iowa 487, 491, 69 N. W. 538; Conwell v. Tri-City Ry. Co., 135 Iowa 190, 112 N. W. 546; Carlson v. Meusberger, 200 Iowa 65, 70, 204 N. W. 432. Since there is no irreconcilable conflict between the special finding and the general verdict, under established rules the general verdict, not the special finding, must control.

It is settled both in Iowa and by the authorities generally that all reasonable presumptions are in favor of the general verdict. Nothing is presumed in aid of the special finding. If the general verdict thus aided is not in irreconcilable conflict with the special finding the former must stand. The special finding controls only where the conflict between it and the general verdict is such as to be clearly beyond the possibility

of reconciliation under any conceivable state of facts provable under the issues. Fishbaugh v. Spunaugle, 118 Iowa 337, 343–345, 92 N. W. 58, and citations; note 24 L. R. A., N.S., 1, 67; 53 Am. Jur., Trial, section 1083; 64 C. J., Trial, sections 965–968.

We are not at liberty to resort to the evidence in aid of the special finding. We have many times held that "to entitle a party to a judgment on special findings against a general verdict in favor of his adversary, the special findings must be inconsistent with the general verdict, and must *of themselves, or when taken in connection with the facts admitted by the pleadings,* be sufficient to establish or defeat the right of recovery." (Italics added.) Schulte v. Chicago, M. & St. P. Ry. Co., supra, 114 Iowa 89, 93, 86 N. W. 63, 64, and citations. See also note 24 L. R. A., N.S., 1, 66; 53 Am. Jur., Trial, section 1084; 64 C. J., Trial, section 968.

To quote further from the Schulte case, 114 Iowa 89, 92, 86 N. W. 63, 64: "* * * the evidence may not be resorted to in aid of the special findings as against the general verdict." And from Case v. Chicago, M. & St. P. Ry. Co., supra, 100 Iowa 487, 491, 69 N. W. 538, 539: "In our opinion, the special findings do not show that she [plaintiff] was negligent. It may be that the evidence showed that she was, but, if so, it did not authorize a judgment against her on the special findings, but only [on] a new trial."

In Conwell v. Tri-City Ry. Co., supra, 135 Iowa 190, 191, 112 N.W. 546, 547, it is said: "* * * the special findings cannot be added to or supported by the evidence, and must be given effect only so far as they necessarily negative the findings which might otherwise be assumed in support of the general verdict." Farmers Sav. Bk. v. Forbes & Son, 151 Iowa 627, 636, 132 N. W. 59, 63, states, "In considering the testimony in aid of the answers to the interrogatories, the court was in error * * *."

In Coffman v. Chicago, R. I. & P. Ry. Co., 90 Iowa 462, 466, 57 N. W. 955, 957, it is said that in determining whether special findings are inconsistent with the general verdict it is proper to consider admissions of the parties, whether made by the pleadings "or by other means." The admissions considered in the cited case were only those made in the pleadings. The above statement in the Coffman opinion is questioned if not

inferentially repudiated in Schulte v. Chicago, M. & St. P. Ry. Co., supra, 114 Iowa 89, 93, 86 N. W. 63, 65, in this language: "Just what was intended does not appear. 'Admissions by other means' had not been taken into consideration, and the remark must be regarded as mere dicta."

This language appears in Martin & Turner v. Widner, McKenzie & Co., 91 Iowa 459, 461, 59 N. W. 345: "Of course, other undisputed facts could be considered by the court in passing upon the motion." This statement is thus explained in Kerr v. Keokuk Waterworks Co., 95 Iowa 509, 513, 514, 64 N. W. 596, 597: "That language was used in connection with the facts as shown by the pleadings, and which were specially found by the special verdict."

To resort to the evidence in search of irreconcilable conflict between the special finding and the general verdict would be in disregard of this holding: "The court will not strain a point to discover an inconsistency between the verdict and the finding * * *." Fishbaugh v. Spunaugle, supra, 118 Iowa 337, 345, 92 N. W. 58, 61.

II. We think plaintiff has not failed, as a matter of law, to show his freedom from *contributory* negligence. As a witness plaintiff repeatedly insists he gave a signal of his intention to turn left by extending his left arm. Part of his testimony is: "I slacked up and gave the left-hand signal. Had the window down and put my hand out. * * * Q. How far before the lane did you give this signal? A. I would say 100 feet or better. I imagine the place where the collision occurred was about 40 feet from the lane. It would be 60 feet before the point of collision that I gave this hand signal."

Plaintiff's wife says: "Before Mr. Fischer started to turn across the center line he rolled the window down and put his hand out."

There is other testimony like the above. There is also evidence that shortly after the collision defendant's bus driver told a highway patrolman, "I guess I was in the wrong."

It is true the bus driver and two passengers in the bus testify they saw no signal, the driver denies having admitted he was in the wrong, and there is evidence plaintiff stated out of court he gave no signal. But the jury had a right to believe

the testimony for plaintiff the signal was given. They may well have concluded plaintiff, as he testifies, gave a signal for sixty feet before he started to turn left. The jury could also properly find that although plaintiff signaled for sixty feet, the bus driver, as he testifies, saw no signal. That the jury could believe part of plaintiff's testimony and part of the bus driver's see Goldapp v. Core, 236 Iowa 548, 554, 19 N. W. 2d 673, 675.

The jury could with equal propriety conclude that if the bus driver did not see a signal given for sixty feet there is little likelihood he would have seen one if it had been given for the full one hundred feet. This is a sound basis for the jury's finding, which inheres in the general verdict, that plaintiff's negligence did not contribute to the collision. See in this connection Janvrin v. Broe, 239 Iowa 977, 987, 33 N. W. 2d 427, 433; Banghart v. Meredith, 229 Iowa 608, 612, 613, 294 N. W. 918; In re Estate of Green, 224 Iowa 1268, 278 N. W. 285.

There is another consideration which justifies the conclusion plaintiff's failure to signal for the entire one hundred feet did not necessarily contribute directly to the collision. Defendant's witness Mrs. Fowler, a passenger in the bus, testifies on direct examination: "The Fischer car was about 100 feet ahead when it started to cross the line and turn to the left. I noticed a lane on the left." The bus driver says he was watching plaintiff's car and could observe him all the time after he was first seen nearly a quarter mile north of the place of collision. The driver admits he saw plaintiff slacken his speed before he started to turn left.

Thus the jury could properly find the bus driver, like Mrs. Fowler, had actual knowledge plaintiff had started to turn left at a time when the bus was one hundred feet behind the car and there was then sufficient time to avoid the collision had the bus driver exercised due care. Under such circumstances failure to signal the intended turn for the full one hundred feet did not necessarily contribute to the collision. See Carlson v. Meusberger, 200 Iowa 65, 73–75, 204 N. W. 432; Ryan v. Trenkle, 203 Iowa 443, 445, 446, 212 N. W. 888, 890; Engle v. Nelson, 220 Iowa 771, 775–777, 263 N. W. 505; Steen v. Hunt, 234 Iowa 38, 43, 44, 11 N. W. 2d 690, 692.

There is a third consideration upon which the issue of freedom from contributory negligence was properly for the jury. The evidence, in the light most favorable to plaintiff, discloses that he merely started to turn left and never was more than a foot to the left (east) of the center line when he heard the horn from the overtaking bus indicate the driver intended to pass. As required by Code section 321.299 plaintiff then immediately turned his car back to the right assuming, as he was entitled to assume, the driver of the overtaking bus would pass to the left of the car in compliance with the same statute.

There is much evidence that before the collision plaintiff's car had resumed travel in the right-hand lane, where it belonged. The bus driver, however, instead of passing on the left as the statute requires and as he could have done safely, suddenly turned to the right in an apparent attempt to pass on that side. And when plaintiff's car was wholly in the right (west) lane, the front left side of the bus struck the right rear of the car and sent it some distance to the southeast.

Plaintiff testifies: "I was clear on my right side of the pavement when I was struck." Mrs. Fischer says: "The bus hit us on the right rear with his left side. * * * When the collision occurred * * * the left side of his [plaintiff's] car was on the right side of the black line."

The bus driver testifies:

"When I noticed he was turning I signaled my horn. * * * After I signaled I swerved back on to the right side of the road to avoid him. * * * I saw Fischer on the left-hand side of the road and then went back to the right. He went back on the signal of my horn. * * * Q. When you signaled with your horn, didn't you expect him to turn back in the right-hand lane? A. Well, it is hard to say. You can't expect what anybody is going to do any more."

Burright, a passenger in the bus, testifies for defendant:

"When the Fischer car turned to the left the bus driver swerved to the right. Before that I don't suppose the Fischer car was more than across the center line. The bus driver tried

to avoid hitting the car and swerved back to the right and it was too close. He struck the rear right end of the car."

The jury could conclude plaintiff's failure to comply strictly with sections 321.314 et seq. had no direct causal connection with the collision but the sole cause was the bus driver's failure to pass plaintiff's car on the left after the driver signaled his intention so to do or his failure to slacken his speed, drop back into his right lane or have the bus under control in order to avoid striking the car. It is a permissible conclusion the bus driver's impatience and haste in trying to pass plaintiff caused the collision to the exclusion of any failure of plaintiff to give the statutory signal of his intention to turn left.

■ These are some of our decisions, applicable here, which hold that where a motorist reaches a place where he rightfully belongs before he is struck by another vehicle any negligence of his prior to reaching such place did not contribute to his injury: Wambeam v. Hayes, 205 Iowa 1394, 1399, 219 N. W. 813; Enfield v. Butler, 221 Iowa 615, 625, 264 N. W. 546; Goldapp v. Core, supra, 236 Iowa 548, 553, 554, 19 N. W. 2d 673, 675.

III. Defendant challenges plaintiff's right to recover for damage to his car on the ground there is no evidence (1) the repairs to the car did not put it in better condition than it was before the collision, or (2) of the value of the sedan prior to the collision.

Plaintiff thus describes the condition of his car after the collision: "It pretty near looked like a dishrag * * *. Our front seat was broke loose. * * * The back end was completely caved in, fender and gas tank and everything." He testifies he paid "the cost of repairing the damage that arose from this collision" and that such cost was $340. Plaintiff also says he procured two different estimates of the cost of such repairs, each in excess of $300. There is no testimony contrary to the above. However, since plaintiff's petition alleges the car was damaged in the amount of only $285 the instructions limit recovery for this item to such amount. There is no reason to doubt that the jury did not allow more than $285 for damage to the automobile.

Plaintiff doubtless sought recovery for the reasonable cost of repairing the damage done his car on the theory it could be repaired so it would be in as good condition as before the collision. See Langham v. Chicago, R. I. & P. Ry. Co., 201 Iowa 897, 901, 208 N. W. 356, 358; Kohl v. Arp, 236 Iowa 31, 33, 17 N. W. 2d 824, 826, 169 A. L. R. 1067, and annotation 1100, 1107 et seq. In Laizure v. Des Moines R. Co., 214 Iowa 918, 241 N. W. 480, we say that under this theory the complaining party is not entitled to a better car, by reason of added repair, than he had immediately before the collision. The controlling principle is to award fair compensation for the pecuniary loss sustained.

We think it may be inferred from the testimony, in the absence of evidence to the contrary, that only the damage caused by collision was repaired and plaintiff did not have a better car than before the collision.

 Recovery for repairs to an automobile may not exceed its value immediately before the collision. Langner v. Caviness, 238 Iowa 774, 782, 28 N. W. 2d 421, 425, 172 A. L. R. 1135, 1140, and citations; annotation 169 A. L. R. 1100, 1115; 5 Berry on Automobiles, Seventh Ed., section 5.229, page 364. The jury was properly so instructed. Here the value of plaintiff's car before the collision is not shown. This should have been done. However, under the circumstances here we are not disposed because of this omission to require a remittitur of $285 or grant a new trial.

 As above explained, recovery was limited to $55 less than the actual amount paid for repairs. It is common knowledge of which we may take judicial notice that in the summer of 1946 when this collision occurred used cars were in great demand and were selling at very high prices. See Reeves v. Clark, La. App., 18 So. 2d 223, 224; In re Beall's Will, 184 Misc. 881, 54 N. Y. S. 2d 869. Judicial notice has been taken of somewhat analogous matters of no more common knowledge. See Lautenbach v. Meredith, 240 Iowa 166, 170, 35 N. W. 2d 870, 872, 873, and citations; Elizabeth Lake Estates v. Waterford Twp., 317 Mich. 359, 26 N. W. 2d 788, 790.

In Uhlenhopp v. Steege, 233 Iowa 368, 371, 372, 7 N. W. 2d 195, 197, we took judicial notice the value of a car involved

in a collision exceeded the cost of repair. It is true the car in question was less than a year old at the time of the collision.

While the matter may not be entirely free from doubt we think judicial notice may be taken, in the absence of evidence to the contrary, that the value of this 1937 Oldsmobile 4-door sedan, apparently in good running order, used by a salesman in his business, was not less than $285 in August 1946, under the conditions then existing.—Affirmed.

BLISS, OLIVER, HAYS, and MULRONEY, JJ., concur.

HALE, C. J., dissents.

WENNERSTRUM and SMITH, JJ., dissent from Division II.

MANTZ, J., not sitting.