Taylor G. GOLDEN and Lorraine
Golden, Appellants,

v.

Robert J. SPRINGER and Jaunty Fabric
Corporation, Appellees.

No. 55883.

Supreme Court of Iowa.

Jan. 21, 1976.

James W. Crawford, Gene V. Kellenberger, Mark Belz, Cedar Rapids, for appellants.

Wayne C. Collins and William R. Shuttleworth, Cedar Rapids, for appellees.

Heard before MOORE, C. J., and MASON, LeGRAND, HARRIS and McCORMICK, JJ.

MASON, Justice.

This is an appeal by plaintiffs from judgment based on an adverse jury verdict returned in a law action growing out of an automobile-semitrailer truck collision in Cedar Rapids. Plaintiffs join in this action their respective claims for relief based on the theory defendants' negligence in one or more of the respects specified was the proximate cause of the collision. In one division of their petition Taylor G. Golden, owner and operator of the automobile involved in the collision, sought damages for personal injuries and damages to his vehicle. In the other division Lorraine Golden, a passenger in her husband's car, asked recovery for personal injuries sustained. Both claims named Jaunty Fabric Corporation, owner of the semitrailer, and its employee, Robert J. Springer, operator of the semitrailer, as defendants.

Jaunty Fabric counterclaimed against Taylor G. Golden for damages alleged to have been sustained to its vehicle as a proximate result of Golden's negligence. All claims were submitted to the jury which returned a verdict for defendants on plaintiffs' claims and awarded a recovery to Jaunty Fabric against Mr. Golden for damage to the truck.

At about 1:45 p. m. February 20, 1965, Golden was driving his 1954 Chevrolet east on U.S. Highway 30 (Waconia Avenue S.W.) within the Cedar Rapids city limits. Just before the collision, Mr. Golden decided to purchase gasoline at a service station on the north side (his left) of the road near the next intersection. The testimony indicates the Golden vehicle's speed was approximately 30 miles per hour.

Meanwhile, defendant-driver Robert J. Springer and his relief driver, Angelo De Antonio, were proceeding westerly on the same highway. While Mr. Golden testified the truck's speed was 40 to 45 miles per hour, the other evidence indicates it was not traveling at a high rate of speed.

The record is clear Golden commenced execution of his left turn to the service station. Just how far he made it into the left (north) lane is the subject of conflicting

testimony. Mr. Golden contended he "just crossed" the center line and was at most somewhat less than three feet over the line. William J. Craig had been following plaintiffs' car and stated that, while he could have missed it, he never saw the Chevrolet leave its own lane. Mr. De Antonio testified the car was more than just a few feet over the center line and that in any event there was insufficient space in the north lane for the truck to pass. Finally, defendant Springer testified the Chevrolet was "dead center" in the truck's lane of travel.

In any event, Mr. Golden first saw the truck when it was about 150 feet away, and according to his testimony he made a "little quick return," but not a swerve to his own lane. Golden stated defendants' vehicle was still 75 feet or a quarter of a block away at this point. De Antonio stated plaintiffs' car made a sharp swerve back to its own lane.

In an apparent attempt to avoid the collision, Springer executed a move to the left. Whether this maneuver occurred before the Golden Chevrolet turned back to its own lane is unclear. Unfortunately, the collision came to pass despite both drivers' efforts to avoid it. The testimony of Mr. Golden and Mr. Craig indicates the collision took place in plaintiffs' lane. Craig stated the truck "for no reason at all" turned to the left. Plaintiffs' expert testified the collision "was all or quite close to being completely in the south lane."

Several photographs of the accident scene were admitted into evidence. They indicated plaintiffs' car was facing at a slight southeasterly direction (which would indicate Golden had been maneuvering to the right). They also showed some "light" skid marks testified to have been made by the truck. Plaintiffs' expert opined the truck's wheels could not have been locked or the skid marks would have been heavier. Springer, on the other hand, claimed the wheels were locked.

At any rate, the evidence seems clear both vehicles were moving at a fairly slow speed, that the Golden vehicle at some point crossed the center line and returned, and finally, that the car and truck collided in the car's traffic lane.

At the end of all evidence, plaintiffs requested the following instruction (No. 4) be given:

"You are instructed that if you find that at the time and point of collision between these two vehicles, the automobile driven by the plaintiff Taylor G. Golden, was in a place where it had a lawful right to be or where it belonged, then negligence on the part of Taylor G. Golden, if any, prior to reaching such place cannot be a proximate cause of this collision, and such negligence, if any, could not contribute to his injuries and damages, if any."

Plaintiffs gave the trial court the benefit of four Iowa case citations in support of this instruction, but the trial court nevertheless failed to so instruct the jury. Plaintiffs excepted to this failure and again referred the trial court to those Iowa authorities.

Defendants requested an instruction on the sudden emergency doctrine, and the trial court in instructions 22 and 23 so instructed. Instruction 22 provides:

"The defendant claims that if it is found that he violated a statute or ordinance in the operation of his motor vehicle, that he had a legal excuse for doing so and was, therefore, not negligent. * * * [T]he burden of proof is upon the defendant to establish a legal excuse by a preponderance of the evidence.

"By one of the definitions of the term 'legal excuse' is meant:

" 'When the driver is confronted by an emergency not of his own making, and by reason thereof he fails to obey the statute.'

"If you find that the defendant has violated a statute or ordinance, as submitted to you in other instructions, and that he has established a legal excuse for doing so under the one definition given to you in this instruction, then you should find the de-

fendant not negligent for violating the particular statute involved."

Instruction 23, in relevant part, provides:

" * * * You are instructed that in this case the only party to whom this doctrine of sudden emergency could apply by the terms thereof and who is making claim of its application are the defendants, Robert J. Springer and Jaunty Fabric Corporation. * * *."

Plaintiffs excepted to the giving of the foregoing instructions because they were made applicable only to defendants and were "unbalanced" and "favorable" only to defendants. They contended the instructions overemphasized defendants' case and that they amounted to " * * * instructing the jury that the defendant driver was in fact faced with a sudden emergency, and was tantamount to directing a verdict in favor of the Defendants." It was also pointed out the latter defects could have been cured by granting plaintiffs' requested instruction 4.

The objections and exceptions to the trial court's refusal to submit plaintiffs' requested instruction as well as those raised against instruction 23 (but not 22), were raised again in plaintiffs' motion for a new trial.

Plaintiffs' contentions the trial court erred in failing to instruct the jury in accordance with their requested instruction 4 and erred by charging the jury the doctrine of sudden emergency was available only to defendants present the questions for review.

I. Plaintiffs contend because a question of fact for the jury was generated as to the position of their vehicle before the collision, and because the collision itself took place in plaintiffs' traffic lane, they were entitled to an instruction to the effect that if, at the time of the collision, plaintiffs' Chevrolet were in a position where it had a lawful right to be, any prior negligence on their part in reaching that lawful position could not have been a proximate cause of the accident.

In their brief and argument plaintiffs deal at length with the four Iowa cases cited to the trial court in support of their requested instruction 4. We consider the cited cases in chronological order.

In *Wambeam v. Hayes,* 205 Iowa 1394, 219 N.W. 813, plaintiff's and defendant's vehicles were involved in a country highway collision. The trial court granted defendant's motion for a directed verdict on the grounds defendant was not negligent and that plaintiff was contributorily negligent (as matters of law). This court noted at the outset the question of defendant's negligence was for the jury as was plaintiff's contributory negligence.

In *Wambeam,* plaintiff, traveling east, approached an intersection at which he negotiated a turn to the north. Plaintiff had the right of way. At a point approximately 50 feet north of the intersection, a collision with defendant's southbound vehicle occurred. Defendant contended plaintiff had not crossed to the right of the intersection before turning north and thereby contributed to his own injury. Plaintiff, on the other hand, introduced evidence his car was on the correct side of the road. This court stated whether plaintiff's testimony was to be believed was for the jury. The trial court erred by holding as a matter of law plaintiff was contributorily negligent. We also stated:

"If plaintiff's car had reached the easterly [right-hand] side of the north and south road where it rightfully belonged when he was struck by the defendant's car, *his negligence,* if any there was, by failing to pass beyond and to the right of the intersection, *did not contribute to his injury.*" 205 Iowa at 1399, 219 N.W. at 816. (Emphasis supplied).

It is perhaps significant defendant did not assert in *Wambeam* he was faced with an emergency caused by plaintiff's negligence in reaching the right side of the road. Also important is the fact the collision took place some 50 feet north of the intersection,

so it is logical plaintiff's negligence, if any, in crossing the intersection could not have contributed to his injury. Finally, this court stated under these conflicting facts the trial court " * * * was not warranted in holding, as a matter of law, that plaintiff was guilty of contributory negligence." 205 Iowa at 1399, 219 N.W. at 816.

In *Enfield v. Butler*, 221 Iowa 615, 264 N.W. 546, defendant, traveling east, collided with plaintiff who was proceeding west but who also was turning left (south) onto a "Y" intersection. The evidence conflicted as to the position of plaintiff's decedent's car—whether it was still on the east-west highway or on the "Y" intersection.

Defendant contended the trial court should have directed the verdict on the basis plaintiff had failed to show plaintiff's decedent and her driver were free from contributory negligence. This court did not agree and noted that " 'except in cases where the facts are clear and undisputed, and the cause and effect so apparent to every candid mind that but one conclusion may fairly be drawn, the question of contributory negligence is for the jury.' *Carlson v. Meusberger*, 200 Iowa 65, 72, 204 N.W. 432, 435. There being a direct conflict as to the point of the accident, the question of contributory negligence in this case under the facts is necessarily one for the jury, * * *." 221 Iowa at 624, 264 N.W. at 551.

The court then stated these facts brought the case "squarely" under the rule of *Wambeam* : "And in this case, if the car of the [plaintiff's] deceased, * * * was entirely over the yellow line on to * * * [the Y intersection, then the negligence of plaintiff's decedent or her driver] in making the turn from one pavement to the other was not and could not be the proximate cause of the injury and resulting damage." 221 Iowa at 625, 264 N.W. at 551.

In *Goldapp v. Core*, 236 Iowa 548, 19 N.W.2d 673, defendant was traveling east on U. S. Highway 6 and plaintiff was following in his tractor and trailer. As de-

fendant undertook to make a left-hand turn off the paved highway onto a county dirt road the collision occurred. Both parties moved for directed verdicts which the trial court denied. The jury found for defendant on his counterclaim and plaintiff appealed contending the trial court erred in failing to sustain his motion for a directed verdict on defendant's counterclaim. Most relevant here is plaintiff's claim defendant was contributorily negligent as a matter of law.

In rejecting this contention, this court noted the aforementioned rule that questions of contributory negligence are usually for the jury, and stated: " ' * * * There being a direct conflict as to the point of the accident, the question of contributory negligence in this case under the facts is necessarily one for the jury, * * *.' " 236 Iowa at 553, 19 N.W.2d at 675.

Furthermore, the court quoted the rule in *Wambeam* and stated the jury could have found the collision occurred either before defendant had commenced or after he had completed the turn and the collision occurred because plaintiff failed to observe defendant's hand signal and lost control. The jury was not required to find, as a matter of law, defendant's operation contributed to " * * * the collision in such a manner as to defeat his right to recover herein. [Citing *Wambeam* ]." 236 Iowa at 555, 19 N.W.2d at 676.

Finally, the court is referred to *Fischer v. Hawkeye Stages*, 240 Iowa 1203, 37 N.W.2d 284, where plaintiff was driving his car south followed by defendant's bus some 25 to 100 feet behind. As plaintiff began a left turn into his farm lane, the bus driver honked his horn to signal an intention to pass. Plaintiff did not know the bus was behind him and upon hearing the horn, turned back into the right lane. The bus rear-ended the car.

Defendant contended plaintiff was contributorily negligent as a matter of law in failing to signal. Plaintiff and his wife testified he in fact did signal. This court

held the jury's negative answer to a special interrogatory concerning whether plaintiff signaled 100 feet before the turn was not irreconcilable with the general verdict for plaintiff because the general verdict obviously entailed a finding the failure to signal did not contribute to the accident.

The *Fischer* case has this statement: "The jury could conclude plaintiff's failure to comply strictly with sections 321.314 et seq. had no direct causal connection with the collision but the sole cause was the bus driver's failure to pass plaintiff's car on the left after the driver signaled his intention so to do or his failure to slacken his speed, drop back into his right lane or have the bus under control in order to avoid striking the car. It is a permissible conclusion the bus driver's impatience and haste in trying to pass plaintiff caused the collision to the exclusion of any failure of plaintiff to give the statutory signal of his intention to turn left.

"These are some of our decisions applicable here which hold that where a motorist reaches a place where he rightfully belongs before he is struck by another vehicle any negligence of his prior to reaching such place did not contribute to his injury: * * [citing *Wambeam, Enfield, and Goldapp*]." 240 Iowa at 1211, 37 N.W.2d at 289.

Based upon the statement last quoted from *Fischer* which is recognized in the other three cited cases plaintiffs insist even though the Golden vehicle had encroached upon defendants' lane of traffic some distance before the collision, if the Golden vehicle returned to its proper lane of traffic prior to the collision and the impact itself occurred wholly within plaintiffs' proper lane of traffic, plaintiffs' requested instruction 4 would have *obliged* the jury to find Taylor Golden free from contributory negligence.

Plaintiffs thus contend they were entitled to the requested instruction both as it would bear on the concept of proximate cause essential to a favorable verdict for Jaunty Fabric on its counterclaim and on the defense of contributory negligence relied on by defendants as a bar to plaintiffs' recovery.

In this connection we point out the accident occurred prior to July 4, 1965, the date section 619.17, The Code, became effective. Trial commenced thereafter. This statute effected a change in the Iowa law as to the burden of pleading and proving contributory negligence where the opponent relies upon the negligence of the plaintiff as a complete defense or bar to plaintiff's recovery. See *Schultz v. Gosselink*, 260 Iowa 115, 121, 148 N.W.2d 434, 437–438.

■ The trial court in its instructions 3, 4 and 7 properly placed the burden on defendants to prove Golden's negligence contributed in any way or any degree to the collision in order to defeat his recovery. In instruction 8 the court told the jury that contributory negligence on the part of Mr. Golden would not be imputed to his wife Lorraine and would not bar her recovery unless defendants established that Mr. Golden's negligence, if any, was the sole proximate cause of the collision and of the injuries sustained by his wife. Plaintiffs made no objections to these instructions.

In any event, plaintiffs' argument would require the jury in determining existence of negligence to disregard the fact a plaintiff vehicle driver had been proceeding in his left or wrong lane of travel in the face of oncoming traffic in violation of statute or ordinance if at any point prior to impact the offending vehicle returned to its proper lane of travel. Carried to its logical conclusion this theory would require the trial court to so instruct the jury in utter disregard of the space separating the vehicles or the interval of time between the return maneuver and the impact.

Defendants in response to plaintiffs' contention seek to distinguish the cited authorities as they view the pronouncements made in those cases. They argue the rule asserted by plaintiffs is not a correct statement of law when carefully examined since "it would insulate the drunken, reckless or neg-

ligent driver from responsibility for their conduct. Take for example, the case where a car is weaving down the road, back and forth over the centerline, and collides with an oncoming or stopped car trying to avoid it. If the point of impact occurs when such driver's vehicle happens to have just weaved back to its side of the road such driver would be absolved, as a matter of law, of any responsibility for both negligence and contributory negligence under the plaintiffs' theory. Such a rule is not and should not be the law of Iowa."

■ As stated, the collision occurred within the city limits of Cedar Rapids February 20, 1965. Thus, section 321.297, The Code, 1962, is applicable: "Traveling on right-hand side. The operator of a motor vehicle, in cities and towns, shall at all times travel on the right-hand side of the center of the street." (Amended, Acts of the Second Session, Sixty-third General Assembly, chapter 1149, section 1; and rewritten, Acts of the Regular Session, Sixty-fifth General Assembly, chapter 216, section 1).

In this connection, it is stated in 2 Blashfield Automobile Law and Practice, (Third Ed.), section 101.67, pages 131–133:

"It is frequently provided by statute or ordinance that persons operating or driving motor vehicles on the highway shall keep to the right of the center of the highway at all times when possible to do so, especially where such persons should actually see any other person traveling on such highway in the opposite direction, and the statutory command is not limited to the exact point of collision but embraces the entire course of departure from, and return to, the right-hand side, where such deviating course is likely to have caused confusion in the minds of other drivers. * * *."

Section 111.11, page 553 of Blashfield has this statement: "The fact that a person was on the right side of the road is an indication that reasonable care was exercised, [citing *Yost v. Miner*, 163 N.W.2d 557, 560 (Iowa 1968)] but it alone is not conclusive on the question of the presence or absence of negligence. * * *."

■ Plaintiffs do not persuade us that the statement of law embodied in their requested instruction 4 is a correct principle to be set forth in an instruction adapted to the record.

The trial court did not commit reversible error in refusing to give plaintiffs' requested instruction.

II. Plaintiffs' second assignment of error concerns instruction 23 which limited the applicability of the sudden emergency legal excuse to defendants. It is argued there is no Iowa authority rendering the doctrine available only to the party who requests such an instruction. Furthermore, plaintiffs argue the doctrine was applicable to them under the instant facts. "It is clear that the jury, under the facts elicited at trial in the case at bar, could have found that the Defendants' truck was traveling at a high rate of speed, such that an emergency situation was created thereby. When the Plaintiff, Taylor G. Golden, began to make his lefthand turn, he could have been confronted with that sudden emergency, not brought about by his own fault. This was a question of fact for the jury, * *."

Plaintiffs' exceptions to this instruction at no point stress in what manner the doctrine is applicable to them. In fact, it was asserted during trial that if the court would have also instructed in accordance with plaintiffs' requested instruction dealt with in the first division herein, any "unbalance" would have been cured. No mention of excessive speed as creating an emergency on the part of defendant driver appears in the record. No request was made in plaintiffs' exceptions to the instructions that the doctrine of sudden emergency be made applicable to their case. This truncated objection may well not have alerted the trial court to the contention plaintiffs now raise on appeal.

■ The sudden emergency instruction as given by the court related only to the

negligence of defendant arising from his position in Goldens' lane of travel. The evidence is clear plaintiffs' car proceeded, to some extent, over the center line. Not feeling there was sufficient room for the truck to pass, the driver swerved left into the car's previous lane as the car did the same. The collision ensued.

The foregoing circumstances fit within this court's definition of emergency which has been " * * * variously defined as (1) an unforeseen combination of circumstances which calls for immediate action; (2) a perplexing contingency or complication of circumstances; (3) a sudden or unexpected occasion for action; exigency; pressing necessity. * * * [citing authorities]." *Young v. Hendricks*, 226 Iowa 211, 215, 283 N.W. 895, 898. See also *Oakes v. Peter Pan Bakers, Inc.*, 258 Iowa 447, 458, 138 N.W.2d 93, 100, 10 A.L.R.3d 247, 256 and *Schmitt v. Jenkins Truck Lines, Inc.*, 170 N.W.2d 632, 644, 46 A.L.R.3d 636 (Iowa 1969).

" * * * [T]o be available as a legal excuse an emergency must not be of the driver's own making in whole or in part. * * * [citing authorities]." *Erickson v. Thompson*, 257 Iowa 781, 789, 135 N.W.2d 107, 112. See also *Oakes v. Peter Pan Bakers, Inc.*, 258 Iowa at 457–458, 138 N.W.2d at 100 and *Yost v. Miner*, 163 N.W.2d 557, 563 (Iowa 1968).

■ There is substantial evidence from which the jury could have found defendant driver's violation of section 321.297, The Code, 1962, was excused by *plaintiffs'* creation of an emergency and that the emergency was not of the truck driver's own making. On the other hand is plaintiffs' contention the jury should have been allowed to find plaintiffs were presented with a sudden emergency if it were found the truck was traveling at an excessive speed.

■ At the outset is the rule that it is not a necessity the doctrine of legal excuse be pleaded before it may be instructed upon. *Schmitt v. Jenkins Truck Lines, Inc.*, 170 N.W.2d at 643; *Dickman v. Truck*

*Transport, Inc.*, 224 N.W.2d 459, 466 (Iowa 1974).

" * * * [T]he nature and extent of an emergency is usually a fact question and if the party urging the existence of 'sudden emergency' sustains his contention by substantial evidence that such an emergency had developed * * * the jury should be instructed thereon. * * * [citing authorities]." *Rice v. McDonald*, 258 Iowa 372, 380, 138 N.W.2d 889, 894; *Yost v. Miner*, 163 N.W.2d at 562–563. See also *Bangs v. Keifer*, 174 N.W.2d 372, 376 (Iowa 1970) —"Whether one has established a legal excuse is usually, but not invariably, a jury question."

■ However, in our opinion plaintiffs failed to generate a jury question on their contention defendant's excessive speed created such an emergency as would constitute a legal excuse of Mr. Golden's violation of the several statutory rules of the road asserted in defendant's counterclaim.

The trial court did not commit reversible error in giving instruction 23.

The case is therefore—Affirmed.